[No. 3452.]

### J. B. Scoggins *v.* The State.

BRIBERY.— INDICTMENT charged that appellant offered to bribe a certain witness to avoid the service of a subpœna. The defense excepted because it did not allege that the witness had been served with a subpœna, nor allege that he was offered a bribe to disobey a subpœna by secreting himself or other means, nor allege the existence or issuance of a subpœna. *Held*, that the exceptions were properly overruled, and the indictment is a good one for the offense of offering to bribe a witness to avoid the service of a subpœna. If the indictment, however, had been for offering to bribe a witness to *disobey* a subpœna or other legal process, it should have alleged the issuance or existence of the subpœna or other process.

APPEAL from the District Court of Brown. Tried below before the Hon. T. B. Wheeler.

The conviction was for the offense of offering to bribe a witness in a criminal proceeding. The penalty imposed was a term of two years in the State penitentiary.

M. L. Hefflefinger was the first witness for the State. He testified that he was at his father's house in Brown county, Texas, on the first Sunday after the district court of Brown county convened, in March, 1884, which was about the 30th day of the month. The defendant, with another man who was unknown to the witness, rode up to the fence, called witness to the fence, and said: "They are going to put Jim Hill on trial on Wednesday, unless you will help us." Witness asked: "How can I help you?" Defendant answered: "I will give you $50 if you get out of the way — leave the county, and stay away until the district court is over." Witness replied that he would do nothing that would injure his standing. Defendant then said: "You want my Winchester gun. The gun is worth $10. I will give you the gun and $40 in money, furnish you a horse, and go with you. We will go anywhere you please. I have a brother in Bell county. There are lots of girls there, and you can have a good time. I will pay expenses if you will get out of the way — out of the county, and stay away for two weeks until the district court is over, and not be present as a witness in the case of the State against James Hill for the theft of your horse." Witness declined the proposition.

James Hill had been previously bound over by a justice of the peace to appear at the March term, 1884, of the district court to answer the charge of stealing the witness's horse. Witness testified as a witness at the trial before the justice of the peace, but had not been served with a subpœna to appear before the district court. He was subpœnaed on the next day after the interview with defendant, and finally testified on the trial. During the conversation recited Deputy Sheriff Cobbler came up to the parties, and defendant remarked to him that he had been talking to witness about getting out of the way until Dick Puckett and Frank Self, who were as guilty as Jim, could be brought to trial.

C. Bean testified, for the State, that he was at the present time, and also during the year 1884, the clerk of the district court of Brown county, Texas. The March term, 1884, of that court commenced on the 24th day of March, 1884, and the first Sunday after the 24th was the 30th day of the said March. The minutes of that court, now before the witness, show that the indictment against James Hill charged him with the theft of M. C. Hefflefinger's horse. It was presented in open court by the grand jury on the 25th day of March, 1884. The minutes show, also, that the said case was pending against the said Hill in the district court of Brown county from March 25, 1884, until in April, 1884, when Hill was tried and

convicted. Here the State introduced in evidence the indictment against Hill.

G. R. Houston was the next witness for the State. He testified that the defendant and some other parties were at his house some time in April, 1884. The defendant introduced, as a subject of conversation, the indictment against him in this case. He remarked that, considering the many things he had done, he thought this a very small matter to be indicted for. Some one asked him what he was indicted for, and he replied: "I only offered Hefflefinger $50 to go fishing."

The defendant then introduced ex-Deputy Sheriff Cobbler, and proved by him that he, Cobbler, was at the house of old man Hefflefinger on the day that defendant went to that house and called M. L. Hefflefinger to the fence. After a time the witness went to the fence where defendant and M. L. Hefflefinger were talking. Defendant then said to witness that he had been talking to Hefflefinger about getting out of the way in order to prevent the trial of Jim Hill, until Puckett and Self could also be arrested and tried for the same offense. Defendant and Hill, who at that time was but seventeen or eighteen years old, were brothers-in-law. On the following day witness went to Brownwood and was given a subpœna for the State's witness in the case of *The State* v. *James Hill.* He then went to defendant, who was in Brownwood at the time, and told him that if he wanted the defense witnesses in the Hill case summoned, he had better get his subpœnas. Witness then had a subpœna for Hefflefinger, and so notified defendant. Defendant said in reply: "You won't find Hill's witnesses, and I don't think you will find Hefflefinger. I offered him $100 yesterday to leave the country and he promised to do so." Witness on the same day served the subpœna on Hefflefinger in the Hill case.

The appellant's motion for new trial complained that the court erred in overruling the defendant's motion to quash the indictment, and that the verdict was contrary to the law and evidence.

*Maples & Maxwell*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. Scoggins, appellant, was convicted for offering to bribe one M. L. Hefflefinger to avoid the service of a subpœna. Defendant moved to quash the indictment because it did not allege that Hefflefinger had been served with a subpœna or other process, or that he was offered a bribe to disobey a subpœna or other legal proc-

ess, by secreting himself or by any other means. The indictment is not obnoxious to this objection, for it not only sets forth facts constituting the offense, but charges in terms that defendant offered to bribe the witness to avoid the process of the district court, etc.

Another ground of objection to the indictment is that it fails to allege the existence of a subpœna for the witness to whom the bribe was offered, and in support of such objection we are cited to *Brown* v. *The State*, 13 Texas Ct. App., 358, and *Hughes* v. *The State*, 43 Texas, 518.

In *Hughes* v. *The State* the indictment failed to charge defendant with either an offer to bribe the witness to disobey a subpœna or other legal process, or to avoid the service of the same, *by secreting himself* or by any other means, etc. The supreme court held the indictment bad. In *Brown* v. *The State*, the defendant was charged and convicted of offering to bribe a witness to disobey a subpœna. This court held that the indictment must charge the existence of a subpœna, and that the same was issued by legal authority.

In *Jackson* v. *The State* (43 Texas, 421), the indictment charged that defendant offered to bribe a witness to avoid the service of legal process. This was the legal effect of the charge, though not made in terms. The supreme court held that the indictment in that case was not defective because it failed to allege that a subpœna or other process had previously been issued. In this we think the rule stated was correct. But if a defendant be indicted for offering a bribe to a witness to disobey a subpœna or other legal process, the indictment must allege the issuance of a subpœna or other legal process, but if a bribe is offered to induce a witness to avoid a subpœna or other legal process it is not necessary for the indictment to allege the issuance of the subpœna or other process.

There being no other grounds relied upon in the brief of appellant for a reversal of the judgment, and after a very careful inspection of the record failing to discover a reversible error, the judgment must be affirmed.

*Affirmed.*

[Opinion delivered May 27, 1885.]